IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TIM ROGERS                                                                                    PLAINTIFF

V.                                                      CIVIL ACTION NO. 1:13-CV-197-SA-DAS

LOUISVILLE-WINSTON COUNTY
AIRPORT AUTHORITY                                                                      DEFENDANT

MEMORANDUM OPINION

This matter comes before the Court on the Louisville-Winston County Airport Authority's Motion for Summary Judgment [72]. Rogers filed the Complaint [1] in this case on October 9, 2013 alleging that the Airport Authority, and its individual commissioners, discriminated against him by refusing to lease a suitable airplane hangar to him. This Court entered an Order [41] granting qualified immunity to the individual Defendants on March 31, 2015. Under the current posture of the case the Plaintiff is pursuing two claims, both brought under 42 U.S.C. §1983.[1] The Plaintiff's first claim alleges that the Airport Authority violated his constitutional right to equal protection under the Fourteenth Amendment. The Plaintiff's second claim alleges that the Airport Authority retaliated against him for exercising his free speech rights protected by the First Amendment. The Airport Authority now requests summary judgment on both of the Plaintiff's claims [72].

*Motion to Strike*

After the summary judgment briefing was completed in this case, the Airport Authority moved to strike the exhibits attached to the Plaintiff's summary judgment response under Federal

---

[1] The Court's previous Order and Opinion [41, 42] found that Rogers' Fourteenth Amendment Due Process claim is subsumed by his Equal Protection claim. This holding applies equally in the context of the instant motion, and is hereby adopted as a finding of this Court relative to Rogers' claim against the Airport Authority.

Rule of Civil Procedure 37 because the Plaintiff failed to respond to interrogatories and requests for production in the discovery process. Rule 37 provides in part:

> "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

FED. R. CIV. P. 37 (c)(1).

The Plaintiff concedes that he did not respond but argues that any such failure was harmless, as the exhibits relied on in his summary judgment response are already part of the record, or were produced by the Airport Authority in the discovery process.

"In performing a Rule 37(c)(1) harmless error analysis . . . this court looks to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Miles v. HSC-Hopson Servs. Co.*, 625 F. App'x 636, 639 (5th Cir. 2015) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563–64 (5th Cir. 2004)). The Airport Authority has not articulated any prejudice, nor has the Court identified any, that it will suffer by the Plaintiff's reliance on its own documents.

The Court finds that the exhibits attached to the Plaintiff's summary judgment response are not the type of information contemplated by Rule 37, because these exhibits are already part of the record in this case, having either already been produced, or by way of attachment to the Airport Authority's own pending motion for summary judgment.

The exhibits attached to the Plaintiff's summary judgment response will not be stricken. The Plaintiff's failure to produce documents already in the Defendant's possession is harmless in this situation. The Defendant has had ample notice of both the existence of these documents, and

the Plaintiff's reliance on them. For these reasons, the Airport Authority's motion to strike [81] is denied.

*Factual Background*

In October of 2010, Plaintiff Rogers inquired with the commissioners of the Airport Authority about leasing a hangar for his airplane. In January of 2011, the Airport Authority offered Rogers a lease on Hangar B at a rate of $100 per month. Rogers rejected this offer on the basis that his airplane would not fit in Hangar B.[2] The Plaintiff inquired about other hangars at the airport, and complained that several of the hangars, while occupied, were being used for non-aviation purposes.[3]

It is undisputed that there were only two lockable hangars not under lease at the time of Rogers' inquiries, B and F.[4] According to Rogers, his plane would not fit inside Hangar B. Hangar F is the largest at the airport and is capable of housing a large plane or multiple smaller aircraft. The Airport Authority told Rogers that renovations to Hangar F were in progress or planned, and that the Hangar was best suited for multiple aircraft, or for a plane much larger than the one Rogers owned.[5] Rogers complained, and at a board meeting on March 20, 2011, the

---

[2] The question of whether Rogers' plane would fit inside Hangar B is the subject of a vigorous and voluminous debate between the parties. Indeed, many pages of the Airport Authority's briefing and exhibits, which include specification sheets, aircraft diagrams, operating manuals, an elaborate explanation of proper strut inflation heights, and even video of a similar aircraft being moved into the hangar, are devoted to arguing that Rogers' plane would actually fit in the hangar. The dispute over whether Rogers' plane would fit into Hangar B is precisely the type of factual dispute not appropriate for summary judgment adjudication. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Any determination by the Court as to the compatibility of plane and hangar would require a substantial weighing of both evidence and credibility, which is simply not appropriate in the summary judgment context. *Id*.
[3] It appears from the record that using airplane hangars for non-aviation purposes may be a violation of certain Federal Aviation Administration policies that the Airport Authority is subject to. It is undisputed that at that time there were hangars at the airport being used for non-aviation purposes.
[4] Rogers complains that several of the hangars were being used for non-aviation purposes in violation of FAA policies. This is not an action to enforce FAA policies, nor has any such claim been alleged. It is therefore undisputed, based on competent summary judgment evidence, that hangars B and F were the only two hangars not under lease at the time of Rogers' requests.
[5] Rogers alleges that the Airport Authority initiated renovations to the hangar for the sole purpose of preventing him from leasing it. Rogers does not offer any evidentiary support for this allegation.

3

Airport Authority offered to lease Hangar F to Rogers for $500 per month once the renovations were completed. Rogers responded by offering to lease half of Hangar F at a rate of $100 per month. The Airport Authority rejected Rogers' offer citing liability concerns with storing multiple aircraft with different owners in the same space.

Although the majority of the planned renovations to Hangar F were eventually completed, as of April 2012 the roof was in a state of disrepair. At a board meeting on April 19, 2012, at which Rogers was present, the Board decided to accept a new offer from Custom Air to lease Hangar F "as-is" at a rate of $300 per month.[6] Custom Air promised to relocate its commercial flying operation to the airport, to lease an additional 4,600 square feet of newly constructed hangar space when completed, and to relocate two maintenance personnel to the airport. Rogers asserted that his request to lease Hangar F should have priority over Custom Air's later request. The Board indicated that Rogers' request had long since expired, that leasing the hangar to Custom Air was in the best interest of the airport, and that it would be inappropriate to use a 4,000 square foot hangar for anything other than a commercial flying operation.

In August of 2012, Rogers emailed the Federal Aviation Administration (FAA) to complain that the Airport Authority would not lease a hangar to him and that many of the hangars at the airport were being used for non-aviation purposes in violation of FAA policies. Ultimately, all of the hangars were returned to aviation use, and in October of 2012, one of the Airport Authority board members agreed to vacate his hangar, C5, to make it available for

---

[6] Sometime in April of 2012, the Airport Authority offered to lease Hangar H to Rogers for $75 per month. Hangar H is a shade hangar with no doors. Rogers refused this offer because he wanted a lockable hangar.

Rogers. Rogers subsequently signed a lease for Hangar C5 for $100 per month. Rogers' informal complaint to the FAA was thus resolved without the filing of an official complaint.[7]

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of*

---

[7] A representative from the FAA did correspond with the Airport Authority and the City of Louisville about Rogers' complaints and allegations.

*Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Equal Protection – Class of One*

Rogers alleges that the Airport Authority violated his constitutional right to equal protection by refusing to lease a suitable hangar to him, and instead leased hangars to other preferred individuals on more favorable terms. According to Rogers, although he was eventually given a lease for an enclosed hangar, his airplane was damaged and suffered unnecessary weathering in the interim. During much of the relevant time, Rogers parked his airplane in an open-air tie-down space at the airport. Rogers further alleges that members of the Airport Authority board personally disliked him, and refused to lease a hangar to him out of personal vindictiveness.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. Plaintiff concedes that he is not a member of a protected class and that his only claim is a "class of one" claim brought under *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). To assert such a claim successfully in the Fifth Circuit, a plaintiff must meet a high standard. *Mata v. City of Kingsville, Tex.*, 275 Fed. App'x. 412, 415 (5th Cir. 2008); *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000). "[T]he plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Olech*, 528 U.S. at 564, 120 S. Ct. 1073); *see also Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Olech*, 528 U.S. at 564, 120 S. Ct. 1073).

The Airport Authority has the initial burden under Rule 56 to show that no genuine factual dispute exists. However, the burden is on the Plaintiff to prove that he was intentionally treated less favorably than others similarly situated, and it is the plaintiff that "must carry the heavy burden of negat[ing] any reasonably conceivable state of facts that could provide a rational basis for their differential treatment." *See* FED. R. CIV. P. 56(c); *see also* FED. R. CIV. P. 56(e)(3); *Ricks v. City of Winona*, 858 F. Supp. 2d 682, 688-89 (N.D. Miss. 2012) (citing *Lindquist*, 669 F.3d at 233; *Olech*, 528 U.S. at 564, 120 S. Ct. 1073); *Premier Pawn, Inc. v. City of Jackson*, No. 3:14-CV-518 DPJ, 2015 WL 4478557, at *2-3 (S.D. Miss. July 22, 2015) (citing *Lindquist*, 525 F.3d at 387). "The existence of a rational basis is not a question of fact." *Premier Pawn*, 2015 WL 4478557, at *2-3 (citing *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 172 n. 6 (5th Cir. 1996)).

Rogers' equal protection claim fails on both prongs. As to the first prong – intentional and less favorable treatment than others similarly situated – Rogers' proffered comparator, Custom Air, is not similarly situated. Whether a class-of-one's comparator is "similarly situated is not a requirement susceptible to rigid, mechanical application — [t]here is no precise formula to determine whether an individual is similarly situated to comparators." *Lindquist*, 669 F.3d at 233-34. "The inquiry is case-specific and requires [the Court] to consider the full variety of factors that an objectively reasonable ... decisionmaker would have found relevant in making the challenged decision." *Id*.

The Airport Authority argues that when considered in the context of the attributes of Hangar F, Custom Air was a commercial tenant, promising to relocate its commercial flying operation to the airport, to lease an additional 4,600 square feet of newly constructed hangar space when completed, and to relocate two maintenance personnel to the airport. Rogers offers

no clear argument that he is similarly situated to Custom Air. Considering the "full variety" of relevant factors, the Court finds that Custom Air is not a similarly situated comparator for purposes of Rogers' equal protection claim.

Even if he could succeed on the first prong, Rogers' equal protection claim fails on the second – rational basis for the difference in treatment. Arguing a rational basis, the Airport Authority again cites the attributes of Custom Air as a commercial tenant, and in addition argues that a lease agreement with Custom Air was in the best interest of the airport in terms of stability and future development. Rogers offers no argument in rebuttal. Bearing in mind that the plaintiff "must carry the heavy burden of negat[ing] any reasonably conceivable state of facts that could provide a rational basis for their differential treatment," the Court finds that the Airport Authority has articulated a rational basis for the differential treatment, and that Rogers has failed to negate the same. *See* FED. R. CIV. P. 56(c); *see also* FED. R. CIV. P. 56(e)(3); *Ricks*, 858 F. Supp. 2d at 688-89 (citing *Lindquist*, 669 F.3d at 233; *Olech*, 528 U.S. at 564, 120 S. Ct. 1073); *Premier Pawn*, 2015 WL 4478557, at *2-3 (citing *Lindquist*, 525 F.3d at 387).

Rogers' second equal protection argument, that other tenants were offered more favorable lease terms, fails for the same reasons. Rogers alleges that Hangars C1 and C3 were leased to individuals at rates substantially lower than market value. The Airport Authority responds that both of these hangars were leased in 2002 on a long-term basis, and that a reduced rate was granted in exchange for the lengthy term. Rogers offers no rebuttal. Rogers also alleges that Hangar G was leased to another individual at a substantially reduced rate. The Airport Authority asserts Hangar G was leased at a reduced rate in exchange for airfield services, such as daily inspections, maintenance, and on demand fuel service by the tenant. Rogers has offered no rebuttal to this assertion. Finally, the Airport Authority alleges that Rogers was constantly in

arrears on his rental payments at his previous airport, vacated that airport without paying the balance due, and that he was currently in arrears for his tie-down space. Rogers has offered no rebuttal.

"[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of [governmental] choices." *Premier Pawn*, 2015 WL 4478557, at *2-3 (citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2100, 124 L. Ed. 2d 211 (1993)). "Where there are 'plausible reasons' for [governmental] action, our inquiry is at an end." *Id*. Because the Airport Authority has successfully carried its burden of establishing that no disputes of material fact exist, and because Rogers failed to carry his burdens of proving he was intentionally treated less favorably, and negating the rational bases for differential treatment, the Court finds that the Airport Authority's motion for summary judgment as to Rogers' equal protection claim must be granted. *See* FED. R. CIV. P. 56(c); *see also* FED. R. CIV. P. 56(e)(3); *Ricks*, 858 F. Supp. 2d at 688-89 (citing *Lindquist*, 669 F.3d at 233; *Olech*, 528 U.S. at 564, 120 S. Ct. 1073); *Premier Pawn*, 2015 WL 4478557, at *2-3 (citing *Lindquist*, 525 F.3d at 387).

*First Amendment Retaliation*

Rogers next alleges that the Airport Authority violated his constitutional rights, protected by the First Amendment, when it refused to lease a hangar to him in retaliation for his expressive activity. Specifically, Rogers asserts that he complained publicly about the Airport Authority's refusal to lease a hangar to him and its favorable treatment of other individuals at Airport Authority meetings, to board members, and to the FAA. Rogers argues that the Airport Authority refused to lease a hangar to him in retaliation for his comments.

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected

speech activities." *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (quoting *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002)). To establish a First Amendment retaliation claim, a plaintiff must show that: "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Id*.

Without reaching the merits of whether the Plaintiff engaged in a constitutionally protected activity, the Court finds that the Plaintiff has not brought forth any competent evidence that any adverse action by the Defendant was substantially motivated by his conduct. In essence, the Airport Authority argues, and the Court agrees, that Rogers failed to offer any evidence of causation. As this Court has noted previously in a memorandum opinion, Rogers' allegation that the Airport Authority remained steadfast in their refusal despite his alleged exercise of his First Amendment rights simply does not support a First Amendment retaliation claim. *See* [42]. Rogers has not offered any proof that any adverse action was substantially motivated by the exercise of constitutionally protected conduct.

*Conclusion*

For the reasons stated above, the Airport Authority's motion to strike [81] is denied.

The Airport Authority's motion for summary judgment [72] is GRANTED. This case is CLOSED, and all of the Plaintiff's claims are dismissed with prejudice.

SO ORDERED this the 5th day of August, 2016.

/s/  Sharion Aycock
UNITED STATES DISTRICT JUDGE